# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

LAY PACKING COMPANY, INC.,
a CORPORATION
d/b/a/ LAYS FINE FOODS

Case No.  01-33241

Debtor

FIDELITY & DEPOSIT COMPANY
OF MARYLAND

Plaintiff

v.

Adv. Proc. No.  05-3181

WILLIAM T. HENDON, in his
capacity as Trustee for
the Lay Packing Bankruptcy Estate

Defendant

## MEMORANDUM ON
## MOTION FOR SUMMARY JUDGMENT

**APPEARANCES:**    BLACK McLAREN JONES & RYLAND, P.C.
Michael G. McLaren, Esq.
Robert B. Shappley, Esq.
530 Oak Court Drive
Suite 360
Memphis, Tennessee  38117
Attorneys for Plaintiff

BAILEY, ROBERTS & BAILEY, PLLC
Robert M. Bailey, Esq.
Post Office Box 2189
Knoxville, Tennessee  37901
Attorneys for Defendant

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

On October 21, 2005, the Plaintiff filed a Complaint for Declaratory Relief, which was amended on December 21, 2005, by an Amended Complaint for Declaratory Relief (Complaint), asking the court to grant it the following relief:  (1)  a declaratory judgment determining that the Plaintiff is entitled to a portion of funds recovered by the Defendant from First Tennessee Bank and Robert Palmer; (2)  a judgment in the amount of $10,738.00; (3)  a finding that it is entitled to a portion of all future recoveries from Robert Palmer; and (4)  an award of attorneys' fees and costs associated with the prosecution of this adversary proceeding.  The Defendant filed an Answer on January 16, 2006, denying that the Plaintiff is entitled to any funds recovered by the estate and setting forth failure to state a claim upon which relief may be granted, insufficient service of process, estoppel, failure to file a claim prior to the bar date, res judicata, the Statute of Frauds, the parol evidence rule, and setoff as affirmative defenses.

Presently before the court is the Motion for Summary Judgment filed by the Plaintiff on July 3, 2006, arguing that no genuine issues of material fact exist and that it is entitled to a judgment as a matter of law.  Accompanying the Motion for Summary Judgment are the Statement of Undisputed Facts and a Memorandum in Support of Fidelity and Deposit's Motion for Summary Judgment.[1]  The Plaintiff also relies upon the Affidavit of Penny Bellinger, a salvage attorney for the Plaintiff, a printout of payments received by the Chapter 7 Trustee from Mr. Palmer, the Trustee's Motion to Approve Compromise and Motion to Sell Personal Property Free and Clear of Liens and Other Interests and Notice of Hearing and Objection Period filed on May 10, 2006, and the Order

---

[1] The Memorandum of Law, however, contains no citations to either statutory authority or case law to support the Plaintiff's contention that it is entitled to a summary judgment on the issues raised in the Motion.

2

entered on June 1, 2006, granting the Trustee's May 10, 2006 Motion to Sell Personal Property Free and Clear of Liens and Other Interests.

On July 21, 2006, the Defendant filed the Defendant's Response to Plaintiff's Motion for Summary Judgment (Response), arguing that the Plaintiff is not entitled to summary judgment based upon the facts and applicable law.  In support of his Response, the Defendant also filed the Affidavit of William T. Hendon, the Defendant's Response to Plaintiff's Statement of Undisputed Material Facts, the Defendant's Statement of Additional Material Undisputed Facts, and a Brief in Response to Plaintiff's Motion for Summary Judgment.  Thereafter, on July 26, 2006, pursuant to E.D. Tenn. LBR 7056-1(c), the Plaintiff filed Fidelity and Deposit Company of Maryland's Response to Defendant's Statement of Additional Material Undisputed Facts.

This is a core proceeding.  28 U.S.C.A. § 157(b)(2)(A) and (O) (West 1993).

## I

The following facts are not in dispute.  On January 1, 1989, the Plaintiff issued a $50,000.00 Commercial Crime Policy Fidelity Bond to the Debtor, insuring against employee dishonesty.[2] Between 1993 and 1995, the Debtor incurred financial losses substantially in excess of the $50,000.00 bond due to alleged theft of an employee, Robert Palmer.  On February 3, 1997, the Plaintiff issued a check in the amount of $50,000.00 to the Debtor, representing the maximum

---

[2] Both the Statement of Undisputed Facts and Ms. Bellinger's Affidavit erroneously state that the policy was issued in 1999, which was agreed to by the Defendant as being undisputed in his Response to Statement of Undisputed Material Facts.  However, the policy, a copy of which is attached as an exhibit to Ms. Bellinger's Affidavit, establishes that it was, in fact, issued in 1989, and therefore, all events occurring with respect to Mr. Palmer between 1993 and 1995 were covered under the policy.

amount of its liability for these losses. Thereafter, the Plaintiff and the Debtor hired the law firm of Gentry, Tipton, Kizer & McLemore, P.C. (Gentry, Tipton) to pursue recovery of the money embezzled by Robert Palmer from First Tennessee Bank and Mr. Palmer. This employment agreement was memorialized in a November 24, 1997 letter from Mark Jendrek, of Gentry, Tipton, to F. Edwin Lay, of the Debtor, which, in material part, provides for the Debtor to "pick up approximately 74% of any amount recovered from First Tennessee Bank and [the Plaintiff] would pick up 26%." This letter makes no reference to any distribution between the Plaintiff and the Debtor from the proceeds of any recovery received directly from Robert Palmer.

Also in November 1997, the Plaintiff and the Debtor executed a written Fee Division Agreement, "effective as of January 1, 1998," whereby the parties agreed, in material part, that the Debtor "will be responsible for payment of seventy-four percent (74%) of the legal fees, expenses, and costs of [Gentry, Tipton's] representation. [Plaintiff] agrees that it will be responsible for twenty-six percent (26%) of the legal fees, expenses, and costs of [Gentry, Tipton's] representation." Although the Fee Division Agreement references "a $50,000 fidelity bond insuring [the Debtor] against the dishonesty of Robert Palmer" and recites that "both [the Debtor] and [Plaintiff] wish to recover losses each sustained due to the dishonesty of Robert Palmer," it does not contain a provision regarding a split of the proceeds of any funds that the Debtor might receive from First Tennessee Bank or Robert Palmer.

The Defendant acknowledges that the Debtor and the Plaintiff entered into the Fee Division Agreement, but he disputes the Plaintiff's contention that the agreement was memorialized in the November 24, 1997 letter from Mark Jendrek with Gentry, Tipton stating only that the Plaintiff

4

would be entitled to 26% and the Debtor would be entitled to 74% of any recovery from First Tennessee Bank.

On March 30, 1998, Mrs. Palmer wrote a check payable to the Debtor in the amount of $4,400.00. The Plaintiff received a copy of this check along with a check issued by the Debtor on April 27, 1998, and payable to the Plaintiff in the amount of $1,144.00, representing 26% of the $4,400.00 payment received.[3] In December 1998, the Plaintiff, through its attorney, Ms. Bellinger, inquired as to Mr. Palmer's payments and was advised by Danny Dyer with Gentry, Tipton that Mr. Palmer had made regular payments to the Debtor. Thereafter, on February 3, 1999, the Plaintiff received a check from the Debtor in the amount of $832.00.

On June 29, 2001, the Debtor filed the Voluntary Petition commencing its case under Chapter 11 of the Bankruptcy Code. The case was subsequently converted to Chapter 7 on June 26, 2002, and the Defendant was appointed trustee. The Debtor listed in its statements and schedules a promissory note dated March 30, 1998, executed by Mr. Palmer in favor of the Debtor in the amount of $100,000.00. The note was executed in accordance with a settlement agreement also dated March 30, 1998, between the Debtor and Mr. Palmer, along with his wife, Glenda F. Palmer, resolving the Debtor's embezzlement claims against Mr. Palmer. The Debtor assigned a market value of $25,000.00 to its claims against Mr. Palmer in the schedules filed with its bankruptcy petition.

---

[3] Ms. Bellinger's Affidavit incorrectly states at paragraph 10 that Mrs. Palmer made a $4,000.00 payment to the Debtor, but the copy of the check itself reflects that the amount was, in actuality, $4,400.00.

5

The Debtor also listed as an asset a lawsuit pending in the Circuit Court for Knox County, Tennessee, styled *Lay Packing Company Inc. v. First Tennessee Bank*, No. 3-125-98, grounded on allegations that First Tennessee Bank improperly honored checks of the Debtor endorsed by Mr. Palmer in connection with his alleged embezzlement.  Following the Debtor's bankruptcy filing, the Defendant and First Tennessee Bank resolved this lawsuit, and on May 7, 2004, the Defendant filed a Motion to Approve Compromise with First Tennessee Bank.  No party in interest, including the Plaintiff, objected to the compromise, and on May 28, 2004, the court entered an order granting the Defendant's Motion to Approve Compromise, whereby First Tennessee Bank agreed to pay $12,500.00 to the Debtor's estate in settlement of the Knox County Circuit Court litigation.

In July 2002, Mr. Palmer began making restitution payments to the Defendant, on behalf of the Debtor's bankruptcy estate, in the amount of $400.00 per month and $4,000.00 per year, and he paid $900.00 each month for March and April 2006.  As of April 2006, Mr. Palmer had paid a total of $31,400.00 to the Defendant, in his capacity as Trustee for the benefit of the Debtor's bankruptcy estate.  On May 10, 2006, the Defendant filed a motion to approve a compromise of the estate's claim against Mr. Palmer and to sell, free and clear of liens, the $100,000.00 note executed by Mr. and Mrs. Palmer for $41,000.00.  No party in interest, including the Plaintiff, objected to the sale, and on June 1, 2006, the court entered an order granting the motion.

## II

Summary judgment is appropriate, pursuant to Federal Rule of Civil Procedure 56, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

6

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (applicable to adversary proceedings by virtue of Rule 7056 of the Federal Rules of Bankruptcy Procedure). When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted, but instead, simply determines whether a genuine issue for trial exists. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).

The moving party bears the initial burden of proving that there are no genuine issues of material fact, thus entitling it to judgment as a matter of law. *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). The burden then shifts to the nonmoving party to produce specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986) (citing FED. R. CIV. P. 56(e)). The nonmoving party must cite specific evidence and may not merely rely upon allegations contained in the pleadings. *Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). The facts and all resulting inferences are viewed in a light most favorable to the non-moving party, *Matsushita*, 106 S. Ct. at 1356, and the court will decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S. Ct. at 2512. "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 106 S. Ct. at 2510.

Having reviewed the Motion for Summary Judgment, the Defendant's Response, the Statements of Undisputed Material Facts and the Responses thereto, the Affidavits, and the exhibits,

the court finds that, while there are no genuine issues of material fact, the Plaintiff is nonetheless not entitled to judgment as a matter of law on any issue, because, under the facts presented by the parties, the law supports a judgment in favor of the Defendant.  However, the Defendant did not file a cross motion for summary judgment, and the court is, therefore, limited to denying the Plaintiff's Motion for Summary Judgment.

**III**

The Defendant, in his capacity as Chapter 7 Trustee of the Debtor's estate, has realized $12,500.00 from First Tennessee Bank, $41,000.00 from the sale of the note executed by Mr. Palmer, and $31,400.00 from Mr. Palmer directly, for a total of $84,900.00 attributable to Mr. Palmer's alleged embezzlement.  In its Complaint, the Plaintiff requests a declaratory judgment that it is entitled to 26% of any monetary recoveries enjoyed by the Debtor's bankruptcy estate, which equates to $22,074.00 of the total amount received.  As the basis for this request, the Plaintiff alludes to an agreement between it and the Debtor in November 1997, in which they agreed to split both the costs and recoveries in this manner.  This agreement is discussed in the November 24, 1997 letter from Mark Jendrek of Gentry, Tipton to F. Edwin Lay, Jr., of the Debtor, which states, in material part:

> When we last spoke we discussed the alternatives for going forward on the Robert Palmer matter.  As you may recall, the discussions we had prior to our most recent telephone conversation were aimed at some method of proceeding that would be satisfactory both to the insurance company and to Lay Packing Company.  The result of our meeting was that the fairest approach would be a pro rata sharing of both expenses of pursuing First Tennessee and recovery therefrom.  That is, Lay Packing Company would pick up approximately 74% of any amount recovered from First Tennessee Bank and F&D would pick up 26%.

8

AFF. P. BELLINGER ¶ 5; EX. C.  Other than this letter, however, there is no writing reflecting a formal

agreement between the Plaintiff and the Debtor regarding a share of recoveries from First Tennessee

Bank, nor is there any document reflecting an agreement that the Plaintiff would be entitled to 26%

of any recoveries received from any other source.  Nevertheless, the Debtor issued a check in the

amount of $1,144.00 to the Plaintiff on April 27, 1998, representing 26% of a $4,400.00 payment

received from Mrs. Palmer.  AFF. P. BELLINGER ¶ 10; EX. E.[4]  Additionally, on February 3, 1999, the

Debtor issued a check in the amount of $832.00 to the Plaintiff for its share of the monies collected

from Mr. Palmer pursuant to his note with the Debtor.  AFF. P. BELLINGER ¶ 13; EX. H.

"It is well established that a contract can be express, implied, written, or oral, 'but an

enforceable contract must result from a meeting of the minds in mutual assent to terms, must be

based upon sufficient consideration, must be free from fraud or undue influence, not against public

policy and must be sufficiently definite to be enforced.'"  *Thompson v. Hensley*, 136 S.W.3d 925,

929 (Tenn. Ct. App. 2003) (quoting *Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc.*, 102

S.W.3d 621, 635 (Tenn. Ct. App. 2002)).  Specifically, with respect to oral contracts, the law in

Tennessee is as follows:

> While oral contracts are enforceable, persons seeking to enforce them must
> demonstrate (1) that the parties mutually assented to the terms of the contract and (2)
> that these terms are sufficiently definite to be enforceable.  The mutual assent need
> not be manifested in writing.  It may be manifested, in whole or in part, by the
> parties' spoken words or by their actions or inactions.  It should not, however, be
> inferred from the unilateral acts of one party or by an ambiguous course of dealing
> between the parties from which different inferences regarding the terms of the

---

[4] In her Affidavit, Ms. Bellinger states that "Glenda Palmer wrote a check for $4,[400]" to the Debtor.  This is incorrect.  Mrs. Palmer was the remitter of a $4,400.00 "Cashiers Draft" issued by Knoxville TVA Employees Credit Union.

contract may be drawn.   Mutual assent also may not rest solely on the uncommunicated intentions or states of mind of the contracting parties.

*Burton v. Warren Farmers Coop.*, 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002) (internal citations omitted).  "Indefiniteness as to any essential element of an agreement may prevent the creation of an enforceable contract."  *Peoples Bank of Elk Valley v. ConAgra Poultry Co.*, 832 S.W.2d 550, 553 (Tenn. Ct. App. 1991).

Based upon the evidence presented, it is clear that there was an oral contract between the Debtor and the Plaintiff regarding any monies collected with respect to Mr. Palmer's alleged embezzlement.  Taken together as a reflection of the arrangement between them, the court finds that the Fee Division Agreement, Mr. Jendrek's November 24, 1997 letter, and the two checks issued by the Debtor to the Plaintiff for exactly 26% of funds received directly from the Palmers provide sufficient proof that the Debtor agreed to pay 26% of any monies it recovered with respect to Mr. Palmer, from any source, to the Plaintiff.  These documents and the actions associated therewith evidence a manifestation of the parties' mutual assent as well as the definiteness of the terms thereof sufficient to support the existence of an oral contract between the Debtor and the Plaintiff.

Nevertheless, oral contracts that cannot be performed within one year do not satisfy the Statute of Frauds, which limits the enforceability of these contracts as follows:

> No action shall be brought:  . . .  (5) [u]pon any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract; unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

10

TENN. CODE ANN. § 29-2-101 (2001).  The Statute of Frauds includes agreements such as that

between the Plaintiff and the Debtor concerning recovery of funds in the Palmer matter.

"Tennessee courts do, however, recognize a part performance exception to the Statute [of

Frauds] which is applicable to oral contracts other than for the sale of land."  *Schnider v. Carlisle*

*Corp.*, 65 S.W.3d 619, 622 (Tenn. Ct. App. 2001).

> This doctrine of partial performance to take the verbal contract out of the operation
> of the Statute of Frauds is purely an equitable doctrine and is a judicial interpretation
> of the acts of the parties to prevent frauds.  The acts of the appellant relied on as
> partial performance had been done by him in pursuance to the averred contract and
> agreement and are clearly referable thereto.  "The plaintiff must be able to show such
> acts and conduct of the defendant as the court would hold to amount to a
> representation that he proposed to stand by his agreement and not avail himself of the
> statute to escape its performance; and also that the plaintiff, in reliance on this
> representation, has proceeded, either in performance or pursuance of his contract, so
> far to alter his position as to incur an unjust and unconscious [sic] injury and loss, in
> case the defendant is permitted after all to rely upon the statutory defense."

*Schnider*, 65 S.W.3d at 622 (quoting *Blasingame v. Am. Materials, Inc.*, 654 S.W.2d 659, 663 (Tenn.

1983) (quoting 49 AM. JUR. § 427 at 733)); *see also Johnson v. Lockhart*, No.

M2002-000623-COA-R3-CV, 2003 Tenn. App. LEXIS 641, at *17-18, 2003 WL 22068240, at *6

(Tenn. Ct. App. Sept. 5, 2003).

Based upon the evidence before the court, the Debtor's actions and conduct satisfy the partial

performance exception to the Statute of Frauds thereby causing the oral contract between the

Plaintiff and the Debtor to be enforceable.  The agreement was entered into in November 1997, as

reflected in the Fee Division Agreement and the November 24, 1997 Jendrek letter.  Twice, the

Debtor partially performed under this agreement by sending payments to the Plaintiff reflecting 26%

of the funds collected from the Palmers.  The first check was sent to the Plaintiff in April 1998,

11

within a year from the time when the agreement was entered into. The second check, however, was sent to the Plaintiff in February 1999, which was beyond the one-year immediately following the date upon which the agreement was entered into. These actions sufficiently evidence partial performance of the arrangement by the Debtor, which precludes it from now arguing that the Statute of Frauds applies.

In summary, there was a valid oral contract between the Debtor and the Plaintiff, entered into in November 1997, whereby the Debtor agreed to pay 26% of any monies received, from any source, with respect to Mr. Palmer's alleged embezzlement from the Debtor. And, although the agreement could not be performed within one year, the Debtor's partial performance of the agreement precludes application of the Statute of Frauds, thereby entitling the Plaintiff to enforce the agreement between it and the Debtor for payment of this 26%. The contract was in effect when the Debtor filed its bankruptcy case on June 29, 2001.

## IV

The filing of a bankruptcy petition creates the bankruptcy estate, and all property and interests in property owned by the debtor becomes property of the estate. 11 U.S.C. § 541 (2004). This includes contract rights between a debtor and other parties. *See In re Michener*, 342 B.R. 428, 431 (Bankr. D. Del. 2006). The Plaintiff argues that the 26% at issue pursuant to its agreement with the Debtor concerning the Palmer matter was not property of the Debtor's bankruptcy estate. Along those lines, the Plaintiff also argues that it was not a creditor of the Debtor and that it did not hold a claim for the 26% due it pursuant to the agreement. The Defendant argues, however, that the

12

Plaintiff's rights under any contract with the Debtor provided it with an unliquidated unsecured pre-petition claim thereby making the Plaintiff a creditor of the Debtor, and because it did not file a proof of claim by the October 28, 2002 deadline for filing claims, it has forfeited its rights to claiming 26% of the funds recovered by the Defendant on behalf of the Debtor's bankruptcy estate.

"Creditor" is defined by the Bankruptcy Code as "[an] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C.A. § 101(10)(A) (West 2004). Claim is defined as "[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C.A. § 101(5)(A) (West 2004). The Plaintiff has not offered anything in the record to evidence that the contract between it and the Debtor provided the Plaintiff with anything other than a right to enforce or claim 26% of any monies received by the Debtor, from any source, in connection with the reimbursement of the funds allegedly embezzled by Mr. Palmer. At the time the Debtor filed for bankruptcy, the amount of any recovered monies was unknown, i.e., unliquidated, and contingent upon the Debtor actually receiving any such funds. The Plaintiff has not cited any authority to support any other conclusion.

In summary, from the record before it, the court finds, that while there are no genuine issues of material facts, those undisputed facts support dismissal of the Complaint. The Plaintiff's Motion for Summary Judgment filed on July 3, 2006, must accordingly be denied.

An order consistent with this Memorandum will be entered.


FILED:  August 22, 2006

                              BY THE COURT

                              */s/  RICHARD STAIR, JR.*

                              RICHARD STAIR, JR.
                              UNITED STATES BANKRUPTCY JUDGE